UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-60123-CR-ROSENBERG/HOPKINS

UNITED STATES OF AMERICA

v.

JOSE NIEVES JR.,

    Defendant.
_____/



FILED BY _____ D.C.

OCT 09 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and Jose Nieves Jr., (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Count 1 and Count 2 of the Indictment which charge that he did knowingly persuade, induce, entice or coerce an individual who had not attained the age of eighteen years, that is, L.A. and I.R., to engage in any sexual activity for which a person can be charged with a criminal offense, and attempted to do so, in violation of Title 18, United States Code, Sections 2422(b). The Government agrees to seek dismissal of Count 3 after sentencing.

2. The defendant is aware that the sentence will be imposed by the court after consideration of the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea has been

entered. The defendant is also aware that, under certain circumstances, the court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw his plea solely as a result of the sentence imposed.

3. The defendant understands and acknowledges that on Count 1 and Count 2 the Court must impose a mandatory minimum term of ten (10) years and may impose a statutory maximum term of imprisonment of life. Additionally, the court may impose a term of supervised release up to life; a fine of up to two hundred fifty thousand dollars ($250,000.00); and must order restitution.

4. The United States and the defendant agree that they will jointly recommend that the court make the following findings and conclusions as to the sentence to be imposed:

**_Total Recommended Sentence to be Imposed_**: The parties jointly agree that a sentence of (12) twelve years imprisonment is the appropriate disposition of this case. Additionally, the parties further agree that this sentence may be the result of an upward/downward departure and/or variance from the guidelines.

5.  The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $200 will be imposed on the defendant for each count to which he is pleading guilty. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If the defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

6.  This Office reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7.  This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will file a motion requesting an additional one-level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government

and the court to allocate their resources efficiently. Additionally, this Office and the Defendant have jointly agreed to recommend that that this Honorable Court impose a term of imprisonment of twelve (12) years followed by supervised release of at least five (5) years. The United States, however, will not be required to make this motion or this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to, committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

8. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

9. Defendant understands that by pleading guilty, he will be required to register as a sex offender upon his release from prison as a condition of supervised release pursuant to 18

U.S.C. § 3583(d). Defendant also understands that independent of supervised release, he will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout defendant's life. Defendant understands that he shall keep his registration current, shall notify the state sex offender registration agency or agencies of any changes to defendant's name, place of residence, employment, or student status, or other relevant information. Defendant shall comply with requirements to periodically verify in person defendant's sex offender registration information. Defendant understands that he will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. If defendant resides in Florida following release from prison, defendant will be subject to the registration requirements of Florida State Statute 943.0435. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon defendant's release from confinement following conviction.

10.   As a condition of supervised release, defendant shall initially register with the state sex offender registration in the state of Florida, and shall also register with the state sex offender registration agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer. Defendant shall comply with all requirements of federal and state sex offender registration laws, including the requirement to update defendant's registration information. Defendant shall provide proof of registration to the Probation Officer within 72 hours of release from imprisonment.

11. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 10\9\15        By: *[signature]*
                     JODI ANTON
                     ASSISTANT UNITED STATES ATTY

Date: 10/9/15        By: *[signature]*
                     ERNEST BRADLEY WESTERHOLD
                     ATTORNEY FOR DEFENDANT

Date: 10/9/15        By: *[signature]*
                     JOSE NIEVES JR.
                     DEFENDANT

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-60123-CR-ROSENBERG/HOPKINS

UNITED STATES OF AMERICA

v.

JOSE NIEVES JR.,

    Defendant.
_____/

FILED BY _____ D.C.

OCT 0 9 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## STIPULATED FACTUAL BASIS IN SUPPORT OF PLEA

Had this case proceeded to trial, the parties agree that the United States would have proven the following facts beyond a reasonable doubt:[1]

On May 8, 2015, the Plantation Police Department received information that Jose Nieves Jr., ("NIEVES") was engaging in sex acts with underage females while he was working as a United States Army recruiter in Broward County, Florida. A 17 year old victim, hereinafter referred to as L.A., came forward and advised law enforcement that she met NIEVES at her high school, while NIEVES was working as a recruiter for the United States Army, in January 2015. After school in January 2015, L.A. and another 17 year old female victim, hereinafter referred to as R.K., attended an orientation at the United States Army recruiting office in Plantation, Florida. At the end of the orientation, NIEVES drove L.A. and R.K. back to school, gave them his personal cellular phone number, and told them that his cellular phone issued to him by the United States Army was not working. L.A. and R.K. then began to communicate with NIEVES using the social media application "Whats App." L.A. advised law enforcement that when the communication with NIEVES switched from regular text messaging to "Whats App," the conversations became more enticing and sexual in nature. At first, NIEVES began sending text messages to L.A. asking how her

---

[1] These are not all of the facts that the United States would have proven.

day went and being very friendly. NIEVES then began to flirt with L.A. by sending her text messages stating that he wanted to see her precious face. Ultimately, the text messages evolved into NIEVES enticing L.A. to engage in sexual activity with him.

Several incidents of sexual physical contact occurred in February 2015 between L.A. and NIEVES. First, NIEVES picked L.A. up from school and brought her back to the United States Army recruiting office. NIEVES drove to the rear of the office and proceeded to kiss L.A. Later in that month, NIEVES drove L.A. to her residence from the recruiting office in his personal vehicle. NIEVES drove around the rear of L.A.'s apartment complex so that he could find a darker area where he parked and convinced L.A. to perform oral sex. At the end of February 2015, NIEVES told L.A. that he started setting an apartment up for her to live in with him in Plantation, Florida and drove her there. The apartment was unfurnished with the exception of a mattress in the master bedroom. NIEVES began kissing L.A. and they laid down on the bed where they disrobed. NIEVES then digitally penetrated L.A.'s vagina and attempted to place his penis inside of her, but she said no. NIEVES was aware that L.A. was under the age of 18 because prior to the enticement and sexual relationship, NIEVES had L.A. complete paperwork for the United States Army. L.A completed the paperwork with her correct age.

On May 19, 2015, a 17 year old victim, hereinafter referred to as I.R. who attends high school in Broward County spoke to law enforcement. I.R. participated in the local recruitment program for the United States Army in Plantation, Florida. I.R. advised that as part of her goal to enlist in the United States Army, she initiated the process at the local recruitment center in and participated in weekly physical training sessions called PT. NIEVES was the recruiter who was in charge of conducting the PT sessions with the potential high school recruits. NIEVES introduced himself to I.R. when she started attending the PT sessions in March of 2015.

2

After the second week of PT, I.R. received a text message on her cellular phone from NIEVES. I.R. had not given NIEVES her number and assumed that he must have gotten it from her recruitment paperwork. NIEVES' text to I.R. was about another high school student who he mentioned appeared to be joining a different branch of the Armed Services instead of the Army. NIEVES asked if I.R. would talk to that student about the Army. I.R. did not know the student that NIEVES had texted about. NIEVES provided his personal cellular phone number to I.R. and told her that his government cellular phone wasn't working so he needed to use his personal cellular phone.

NIEVES continued to text with I.R. and asked I.R. questions about herself. NIEVES flirted with I.R. via text messages. At one point, NIEVES asked I.R. if she was interested in older men. I.R. did not know NIEVES' true age at that time, but later learned that he was significantly older than her. NIEVES knew I.R.'s age from her recruitment paperwork, but also because I.R. told him her age during the time that they spent together.

NIEVES routinely picked I.R. up from her residence in his government assigned vehicle to take her to PT sessions on Thursdays. NIEVES always picked I.R. up approximately 30 minutes early so that they could spend time together before the PT session. The first time that NIEVES picked I.R. up from her residence, he came early and took her to a private area in her neighborhood where they kissed. After the session was over, NIEVES drove back to I.R.'s neighborhood and back to the private area. NIEVES again began kissing I.R. and told her to take off her pants. I.R. complied with NIEVES' request and engaged in sexual intercourse with NIEVES. I.R. engaged in sexual activity with NIEVES on a regular basis and believed that they were in a relationship. I.R. and NIEVES communicated with each other on their cellular phones using text messaging and applications such as KIK, Instagram, and WhatsApp.

3

After the interview of I.R., a forensic examination was conducted of her cellular telephone, which revealed that the KIK and WhatsApp application were installed and active. Numerous text messages containing graphic and sexual messages were recovered between I.R. and NIEVES.

On several occasions, NIEVES asked I.R. to take and send naked photos of herself and send them to his personal cellular phone. I.R. complied with NIEVES' request by taking and sending the pictures to NIEVES cellular phone via text message. NIEVES subsequently sent another minor whose initials are R.K., some of the pictures that I.R. sent to him. I.R. discovered that NIEVES had shared her naked pictures and text messages with R.K. and that R.K. had turned her cellular phone over to the police. During the search of R.K.'s cellular phone, a screen capture of a conversation from NIEVES to R.K. was recovered. A picture of a female digitally penetrating herself was sent from NIEVES to R.K. with the message that read as follows, "I asked her for a pic fingering and she always makes me happy with what I want. LOL." I.R. identified herself as the person in the photo that NIEVES sent via text message to R.K.

The defendant and his attorney acknowledge by their signatures below that they have reviewed the stipulated facts with each other and agree with the accuracy of the facts as recited herein above.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 10/9/15      By: _____
                       JODI ANTON
                       ASSISTANT U.S. ATTORNEY

Date: 10/9/15      By: _____
                       ERNEST BRADLEY WESTERHOLD
                       COUNSEL FOR DEFENDANT

Date: 10/9/15      By: _____
                       JOSE NIEVES JR.
                       DEFENDANT

4