UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>15-60123-CR-ROSENBERG</u>

UNITED STATES OF AMERICA

v.

JOSE NIEVES JR.,

**Defendant.**
_____/

## THE UNITED STATES OF AMERICA'S OPPOSITION TO REDUCTION OF DEFENDANT JOSE NIEVES JR.'S SENTENCE

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files its opposition to a reduction in defendant Jose Nieves Jr.'s sentence based on a retroactive amendment to the United States Sentencing Guidelines (DE 54). For the reasons set forth below, this Court should decline to reduce Nieves' sentence.

### OFFENSE CONDUCT

On May 8, 2015, the Plantation Police Department received information that Nieves was engaging in sex acts with several underage females while he was working as a United States Army recruiter. A 17-year-old victim, hereinafter referred to as L.A., and witness, R.K., met with law enforcement and provided information about what occurred.

<u>Minor Victim L.A.</u>

During the interview of L.A., law enforcement learned that she had met Nieves at her high school, in Broward County, Florida, while he was working as a recruiter for the United States Army, in January 2015. At that time, L.A. and another 17-year-old female, R.K., were transported to the United States Army office located at 9793 W. Broward Boulevard, Plantation, Florida, by other United States Army recruiters. While at the office, L.A. and R.K. went through

an orientation and were provided information about joining the United States Army. At the end of the orientation, Nieves drove L.A. and R.K. back to school. L.A. and R.K. advised that Nieves gave them his personal cellular phone number and told them that his cellular phone issued to him by the United States Anny was not working. Subsequently, L.A. and Nieves exchanged text messages about the Army. L.A. sent a text message letting him know who was texting him. Nieves responded with a text message by stating, "It's the really cool Columbian girl, how are you precious." L.A. and R.K. then began to communicate with Nieves using WhatsApp. L.A. stated that, when the communication with Nieves switched from regular text messaging to WhatsApp, the conversations became more enticing and sexual in nature. At first, Nieves began sending messages to L.A. asking about her day and being very friendly. He then began to flirt with L.A. by sending her text messages stating that he wanted to see her precious face. L.A. advised that every time she would walk home, she would call Nieves and talk on the phone. L.A stated that as the relationship went on, the conversations became more flirtatious.

In the beginning of February 2015, L.A. stated that Nieves picked her up from school and brought her to the United States Army recruiting office in Plantation. As they arrived, he drove to the rear of the office, near a lake, and kissed L.A. L.A. advised that she went into the office with Nieves afterwards; however, they walked in separately in an attempt to make it look like someone else brought L.A. to the office.

In the beginning of February 2015, Nieves drove L.A. to her residence from the recruiting office using his personal vehicle. L.A. advised that it was late and dark outside when he drove around the rear of her complex so that he could find a darker area. L.A. advised that once Nieves found the dark area, they parked and he convinced her to give him oral sex. L.A. complied and

2

performed oral sex on Nieves. Nieves subsequently took out several napkins and cleaned both of them up after he ejaculated.

On or about February 27, 2015, Nieves drove L.A. to an address in Plantation, Florida. He told L.A. that he started setting this apartment up for her to live in with him. The apartment was unfurnished but for a mattress in the master bedroom. L.A. stated that they started kissing and laid down on the bed. Nieves began to remove L.A.'s clothing and his clothing. While L.A. was naked on the bed with Nieves, he digitally penetrated her vagina. He attempted to place his penis inside of L.A.'s vagina, but she said no. He then held L.A. down on the bed and tried to force her legs open. He was able to force L.A.'s legs open and started to place his penis inside of her vagina. He stopped when L.A.'s mother called and her cellular phone rang.

Around the end of March 2015, or beginning of April 2015, Nieves parked his assigned vehicle from the United States Army in an area near L.A.'s residence and asked L.A to perform oral sex. He continued to text L.A. about what type of sex they were going to have. He told L.A. that he wanted to take it easy because he was competing with other Army recruiters, so if he had too much sex before the competition, he would be fatigued for the competition. Nonetheless, he still had oral sex with L.A.

The defendant was aware that L.A. was under the age of 18 because prior to the sexual relationship, he had L.A. complete paperwork for the United States Army. L.A completed the paperwork with her correct age.

### Minor Victim R.K.

R.K. provided a sworn audio statement that she was an 11th grade student and attended a high school in Broward County, Florida. She first met Nieves in January 2015. During this meeting, Nieves provided his personal cell phone number to her and L.A. R.K. stated she was

aware of the relationship that formed between L.A. and Nieves, as they openly showed affection towards each other, such as kissing and holding hands. R.K. and Nieves exchanged text messages through WhatsApp indicating that he was having sexual encounters with underage girls. He provided a description of the sexual act, the girl's name, and timeframe of occurrence. R.K. also pointed out a message that Nieves sent her which stated, "I banged too many underage girls." R.K. stated that Nieves solicited oral sex from her, but she declined.

R.K. voluntarily provided her cell phone for law enforcement to review. This revealed numerous messages that were sexual in nature, screen shots of such conversations and a sexually explicit picture of a female subject masturbating, which R.K. stated was sent to her by Nieves. This female subject was later identified as I.R. During the search of R.K.'s cellular phone, a screen capture of a conversation from Nieves to R.K. was recovered. A picture of a female digitally penetrating herself was sent from Nieves to R.K. with the message that read as follows, "I asked her for a pie [sp] fingering and she always makes me happy with what I want. LOL."

Minor Victim I.R.

On May 19, 2015, 17-year-old victim, I.R., was interviewed at the Plantation Police Department. I.R. attended high school in Broward County and participated in the local recruitment program for the United States Army. As part of her goal to enlist in the United States Army, I.R. had initiated the process at the local recruitment center and participated in weekly physical training sessions. Nieves was the recruiter in charge of conducting the physical training sessions with the potential high school recruits. Nieves introduced himself to I.R. when she started attending the physical training sessions in March 2015.

After the second week of physical training, I.R. received a text message on her cellular phone from Nieves. I.R. had not given her number to him and assumed that he must have gotten

her number from her recruitment paperwork. Nieves' text to I.R. was about another high school student who he mentioned appeared to be joining a different branch of the Armed Services instead of the Army. Nieves asked if I.R. would talk to that student about the Army. I.R. did not know the student that Nieves had texted about. Nieves provided his personal cellular phone number to I.R. Nieves told I.R. that his government cellular phone wasn't working so he needed to use his personal cellular phone.

After the first text conversation, Nieves continued to text with I.R. Nieves asked I.R. questions about herself, joked and flirted with her. I.R. recalled that they texted and flirted a lot in the text messages. At one point, Nieves asked I.R. if she was interested in older guys. I.R. did not know Nieves' true age at that time, but later learned that he was significantly older than her. The defendant knew I.R.'s age from her recruitment paperwork, but I.R. also recalled having told him her age during the time that they spent together.

Nieves picked I.R. up from her residence in his government assigned vehicle to take her to physical training sessions on Thursdays. There were numerous times during March and April 2015 that Nieves provided transportation for I.R. Nieves was always alone even though I.R. later learned that the recruiters were not supposed to be alone with students of the opposite gender. Nieves always picked I.R. up approximately 30 minutes early so that they could spend time together before the physical training session.

The first time that Nieves picked I.R. up from her residence, he came early and took her to a private area in her neighborhood where there were tall hedges. Nieves stated, "Aren't you going to kiss me?" I.R. was hesitant but complied. They sat in the car and kissed for a short period of time before attending the physical training session. After the session was over, Nieves drove back to I.R.'s neighborhood and back to the private area near the leasing office.

Nieves began kissing I.R. and told her to take off her pants. I.R. complied with Nieves' request and removed her pants. Nieves was wearing his uniform and unzipped his pants to pull his penis out. Nieves pulled I.R. onto his lap and engaged in sexual intercourse with her. Nieves told her that he was sterile and not able to have children, therefore he did not need to use a condom.

I.R. stated that she engaged in sexual activity with Nieves on a regular basis and that she believed that they were in a relationship together. I.R. stated that every time they were alone in the car, they engaged in sexual contact. On at least two occasions, Nieves picked up I.R. in his personal car and they had sex.

After the interview of I.R., a forensic examination was conducted of I.R.'s cellular telephone, for which she provided consent. The review revealed that the KIK and WhatsApp application were installed and active on her cellular phone. Numerous text messages containing graphic and sexual messages were recovered between I.R. and Nieves. Part of a recovered conversation from April 22, 2015, contained the follow dialogue:

> IR: "Can we hang out thou i want to see and kiss you it doesnt just have to always be sex.
> NIEVES: "I wanna fuck so bad"
> IR: "When you get back Im all yours whenever you want me"
> NIEVES: "I'm thinking about fucking you today"
> NIEVES: "But it'll make me weak:("
> IR: "So dont cum"
> NIEVES: "I seriously like don't have any time so can like 5 or 10 minutes be good enough? Is better than nothing right."
> IR: "Yeah baby thats fine."
> NIEVES: "Ok then I'm in Miami right now and I have to be somewhere in sunrise at 2:45pm. So I'll go straight from here to get my car and then see you to then go over there. So be ready"
> IR: "'Yes sergeant ;)"
> IR: "Love you too. Hurry up and get here im craving you"
> NIEVES: "I'm like 5 minutes away"

On several occasions, Nieves asked I.R. to take and send naked pictures of herself and send them to his personal cellular phone. I.R. complied with the request, and took and sent the naked

6

pictures to him. On one occasion, Nieves instructed I.R. to insert her fingers into her vagina and take a picture "fingering" herself. I.R. complied with the request and sent the picture from her cellular phone to his cellular phone. I.R. had deleted some things on her phone but still had some text messages and pictures. I.R. knew that another minor victim R.K., who is a mutual friend, also received some of the pictures that I.R. had taken of herself at Nieves' request. R.K. also received screen shots of text messages between Nieves and underage girls. I.R. discovered that Nieves had shared her naked pictures and text messages with R.K. and that R.K. had turned her cellular phone over to the police. I.R. identified herself as the person in the photo that Nieves sent via text message to R.K.

### Additional Sexual Contact with U.S. Army Recruits

During the course of the investigation, law enforcement also made contact with two additional female victims, V.J. and R.M., who met Nieves after expressing interest in joining the United States Army.

In October 2014, V.J., who was 26 years of age, developed a relationship with Nieves. When Nieves offered to help her with the physical training sessions, they exchanged numbers. Within two or three weeks, V.J. began receiving flirtatious and sexual in nature. V.J. stated that she had three sexual encounters with Nieves in his personal vehicle and townhouse in Plantation, Florida. These encounters were consensual in nature. V.J. ended their relationship when she learned that Nieves' wife was pregnant.

In March 2015, R.M., who was 18 years of age and a senior in high school, when first met Nieves. She began receiving messages from Nieves from his personal cellular phone. These text messages grew more flirtatious and sexual over time. R.M. stated that Nieves started touching her inappropriately in the car while he was transporting her from physical training to her home. She

would be the last person in the vehicle to be dropped off. When they were alone in the car, she reported that Nieves started rubbing her thigh and would adjust her seat belt in an attempt to touch her vaginal area. R.M. pushed Nieves away.

One day, when Nieves picked R.M. up in his personal vehicle, he drove behind an IHOP restaurant and began to touch R.M. inappropriately. R.M. pushed him off but Nieves continued. At one point, Nieves pulled her pants down and got on top of her. She tried to push him off, was scared, and felt that she could not speak. Nieves then penetrated her vagina with his penis. He was not wearing a condom and pulled out before ejaculating. R.M. recalled that he ejaculated on the seat, her shirt, and his shirt. R.M. stated that this encounter was not consensual, but she felt so ashamed, she did not report the incident. She stated she did not want to pursue criminal charges against the defendant.

## PROCEDURAL HISTORY

On June 9, 2015, a federal grand jury empaneled in the Southern District of Florida returned a three-count indictment against Nieves (DE 15). The indictment charged two counts of enticing a minor to engage in criminal sexual activity, in violation of Title 18, United States Code, Section 2422(b) (Counts 1 and 2), and one count of production of child pornography, in violation of Title 18, United States Code, Section 2251(a) (Count 3).

On October 9, 2015, Nieves pled guilty to Counts 1 and 2 (DE 39). Pursuant to a plea agreement, the parties jointly recommended a sentence of 144 months' imprisonment (DE 41).

On December 4, 2015, this Court sentenced Nieves to the 144 months' imprisonment, which was a downward variance from the advisory guideline range of 292-365 months' imprisonment (DE 48).

## ARGUMENT

### Legal Standard

Pursuant to Title 18, United States Code, Section 3582, a reduction to an otherwise final sentence is a limited and narrow exception to the rule of finality. See United States v. Armstrong, 347 F.3d 905, 909 (11th Cir. 2003). Specifically, the statute provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court *may* reduce the term of imprisonment, after consulting the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2) (emphasis added). Thus, under Section 3582(c)(2), a district court must undertake a two-step process. See Dillon v. United States, 560 U.S. 817 (2010). First, the court must determine if the defendant is eligible for relief under Section 3582(c)(2). Id. at 826–27. The statute authorizes relief only if a retroactive amendment to the sentencing guidelines lowers the defendant's applicable sentencing guidelines range and relief is consistent with applicable policy statements. Id. The applicable policy statement here bars a court from granting relief below the bottom of the amended guideline range. U.S.S.G. § 1B1.10(b)(2)(A).

Then, if a defendant is eligible for Section 3582(c)(2) relief, the court must determine if it will exercise its discretion to reduce that defendant's sentence after it has considered the factors set forth under Title 18, United States Code, Section 3553(a),[1] id. at 826–27, and "the nature and

---

[1] The 18 U.S.C. § 3553(a) factors that the court must consider in ruling on a defendant's 18 U.S.C. § 3582(c)(2) motion include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to accomplish certain aims, such as to reflect the seriousness of the offense, afford adequate deterrence, protect the public, or the defendant's educational, medical, or correctional treatment needs; (3) the kinds of sentences available; (4) the applicable sentencing range under the guidelines; (5) any pertinent Sentencing Commission policy statement; (6) the need to avoid unwarranted disparities among defendants; (7) the need to provide restitution to any victim of the offense. 18 U.S.C. § 3553(a).

9

seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." U.S.S.G. § 1B1.10, cmt. n. 1(B).

Under the § 1B1.10(a)(1) policy statement: "[i]n a case in which a defendant is serving a term of imprisonment, and the guideline range applicable . . . has subsequently been lowered as a result of an amendment . . . the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2)." Notably, "if a defendant receives a sentence modification under § 3582(c)(2), subsequent reduction based on the same amendment to the Guidelines is not available—the modified sentence is no longer based on the outdated Guidelines range." United States v. Caraballo-Martinez, 866 F.3d 1233, 1240 (11th Cir. 2017).

## Advisory Guideline Calculation

Based on the presentence investigation report, Nieves' offense level calculations were as follows:

Group 1

| OFFENSE LEVEL | SCORE |
|---|---|
| USSG § 2G1.3(a)(3): Base Offense | 28 |
| USSG § 2G1.3(b)(2)(B): Unduly Influenced a Minor | +2 |
| USSG § 2G1.3(b)(3)(B): Use of Computer | +2 |
| USSG § 2G1.3(b)(4)(A): Commission of Sex Act | +2 |
| USSG § 3B1.3: Abuse of Public Trust | +2 |
| Adjusted Level (Subtotal) | 36 |

Group 2

| OFFENSE LEVEL | SCORE |
|---|---|
| USSG § 2G1.3(a)(3): Base Offense | 28 |
| USSG § 2G1.3(b)(2)(B): Unduly Influenced a Minor | +2 |
| USSG § 2G1.3(b)(3)(B): Use of Computer | +2 |
| USSG § 2G1.3(b)(4)(A): Commission of Sex Act | +2 |
| USSG § 3B1.3: Abuse of Public Trust | +2 |
| Adjusted Level (Subtotal) | 36 |

(PSI ¶¶ 35-50). Because there were multiple counts of conviction, Nieves' calculations were subject USSG § 3D1.4(a), (b), and (c), which resulted in an additional two levels (PSI ¶¶ 51-53). This resulted in a combined adjusted offense level of 38 (PSI ¶ 54).

Because Nieves engaged in a pattern of activity involving prohibited sexual activity, he was subject to an additional five-level enhancement pursuant to USSG § 4B1.1, resulting in an adjusted offense level of 43. After the three-level reduction for acceptance of responsibility, Nieves total offense level was 40.

With a total offense level of 40 and zero criminal history points, Nieves' advisory guideline range was 292-365 months' imprisonment (PSI ¶ 87).

## Retroactive Amendment

On November 1, 2023, USSG § 4A1.1(e) retroactively applies an additional two-level reduction for any defendant who did not receive any criminal history points and whose instant offense did not involve specified aggravating factors. Specifically, a defendant must meet all of the following criteria to be eligible for relief:

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;

(2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

(3) the defendant did not use violence or credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

**(5) the instant offense of conviction is not a sex offense;**

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

U.S.S.G. § 4C1.1(a) (emphasis added).

Because Nieves' convictions are sex offenses, he is ineligible for a sentence reduction. He is also ineligible for a sentence reduction under Amendment 821 because the Court already sentenced him below the amended guideline range, which the parties jointly recommended at sentencing.

A court may reduce a defendant's term of imprisonment where the Sentencing Commission has lowered the applicable guideline range "if such a reduction is consistent with applicable policy statements issued the by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The applicable policy statement for Amendment 821 sets a floor—a court cannot "reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range." U.S.S.G. § 1B1.10(b)(2)(A); *see also Dillon v. United States*, 560 U.S. 817, 827 (2010) ("Consistent with the limited nature of § 3582(c)(2) proceedings, § 1B1.10(b)(2) also confines the extent of the reduction authorized.").

There is one narrow exception to this general rule, which does not apply here. Under subdivision (B), "[i]f the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing pursuant to a government motion to reflect the defendant's substantial assistance to authorities, a reduction comparably less than the amended guideline range determined under subdivision (1) of this

12

subsection may be appropriate." U.S.S.G. § 1B1.10(b)(2)(B). This "comparably less" carveout, however, applies only to defendants who cooperated with the government and received a sentence reduction either under U.S.S.G. § 5K1.1 or Rule 35(b). When "[t]he Commission amended § 1B1.10(b)(2)," it "prohibit[ed] § 3582(c)(2) reductions below a prisoner's amended guidelines range, unless the original sentence had been below the applicable guidelines range because of a reduction based upon the defendant's substantial assistance to authorities." *United States v. Colon*, 707 F.3d 1255, 1259 (11th Cir. 2013); *see also United States v. Gonzalez-Murillo*, 852 F.3d 1329, 1335-36 (11th Cir. 2017) (same).

In this case, Nieves did not provide any substantial assistance to the United States. There has been no "government motion to reflect the defendant's substantial assistance to authorities." U.S.S.G. § 1B1.10(b)(2)(B). Thus, he is ineligible for a sentence reduction.

## CONCLUSION

Based on the foregoing, this Court should deny a sentencing reduction to defendant Jose Nieves Jr.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:  _____
AJAY J. ALEXANDER
Assistant United States Attorney
Court ID No. A5502506
500 E. Broward Blvd., Suite 700
Ft. Lauderdale, Florida 33394
(954) 660-5778 (telephone)
ajay.alexander@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 9, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will deliver notices of the filing to all counsel of record.

I HEREBY CERTIFY that I also mailed the foregoing document to the following address:

Jose Nieves Jr.
07920-104
Miami FCI
Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 779800
Miami, Florida 33177

_____
AJAY J. ALEXANDER
Assistant United States Attorney